DUNHAM *v.* TOLEDO-DETROIT RAILROAD CO.

1. EVIDENCE—JUDICIAL NOTICE—IT IS MATTER OF COMMON KNOWL-
   EDGE THAT INTERURBAN RAILWAY WOULD BENEFIT PROPERTY
   THROUGH WHICH IT PASSED.

   Where a right of way over grantor's farm for a proposed
   interurban electric railway connecting two cities and pass-
   ing through villages on both sides of grantor's property
   was granted on condition that the land should revert to
   grantor in case the railway was not built within two
   years or was abandoned for railway purposes, it is a
   matter of common knowledge that the conditions attached
   were of substantial value to the grantor and his property,
   especially in view of the fact that the grant was without
   price, the only consideration being the building and main-
   tenance by grantee of fences on both sides and a suitable
   crossing with gates.

2. RAILROADS—GRANT OF RIGHT OF WAY SHOWN TO BE FOR INTER-
   URBAN NOT OPERATED BY STEAM.

   Although a grant of a railway right of way only men-
   tions "railway" and "railway purposes," without designa-
   tion of kind, the finding of the court below that it was
   to be an interurban line not operated by steam is supported
   by the pleadings and proofs.

3. SAME—ABANDONMENT OF RIGHT OF WAY—REVERSION.

   The finding of the court below that a right of way for
   an interurban electric railway had been abandoned by
   the grantee, and that the grantor had re-entered under a
   reversionary clause in the deed, *held*, supported by the
   record.

4. QUIETING TITLE—REVERSION—WHETHER CONDITION PRECEDENT
   OR SUBSEQUENT UNIMPORTANT AFTER FAILURE TO COMPLY AND
   RE-ENTRY AND UNDISTURBED POSSESSION BY GRANTOR.

   Whether a condition in the grant of a railway right of
   way that it should revert in case the railway was not
   built within two years or was abandoned for railway
   purposes is a condition precedent or subsequent is not

---

[1]Evidence, 23 C. J. §§ 1810, 1993 (Anno); [2]Railroads, 33 Cyc.
p. 227; [3]Id., 33 Cyc. p. 227; [4]Id., 33 Cyc. p. 227 (Anno).

controlling, in a suit by the grantor to quiet title, in view of the finding of the trial court, supported by evidence, of failure to build and abandonment by the grantee, and re-entry by the grantor, followed by years of quiet and undisturbed possession, which the courts recognize as divesting the grantee of title and leaving it in the grantor.

Appeal from Lenawee; Hart (Burton L.), J. Submitted October 7, 1926. (Docket No. 27.) Decided June 6, 1927.

Bill by Curtis Dunham against the Toledo-Detroit Railroad Company to enjoin a trespass and to quiet title to land. Defendant filed a cross-bill for affirmative relief. From a decree for plaintiff, defendant appeals. Affirmed.

*Theodore M. Joslin,* for plaintiff.

*Clifford B. Longley, Edgar J. Matz,* and *Charles L. Robertson,* for defendant.

STEERE, J. The bill of complaint in this case was filed in July, 1915. Stripped of its legal verbiage, it alleges, in substance, that plaintiff was owner of an 80-acre farm in Monroe county, and on May 18, 1905, granted a right of way two rods wide across his farm to the Toledo, Ann Arbor & Detroit Railroad Company, upon representations that the same was to be used for an interurban railway, not to be operated by steam. Nothing was paid him for said right of way. The railroad company graded a track bed and built fences along the right of way that year but thereafter abandoned it, and has neither used nor occupied the same since fencing and grading it, about nine years before this bill was filed. It went into the hands of a receiver in 1908, all of its assets were sold and finally passed through various intervening transfers into the hands of the Toledo-Detroit Railroad

Company, defendant herein, which now claims to own the right of way before mentioned. The bill also alleges that, under the reversionary clause in his grant, plaintiff has re-entered and been in actual possession of said right of way for the last 10 years, but the lapsed release of right of way he had granted constitutes a cloud on his title, also saying:

"Your orator further shows, as he is informed and believes, that the said defendant now threatens to enter said premises upon said right of way against his protest for the purpose of constructing a railroad track thereon for the operation of steam cars and he is afraid defendant will do so unless restrained by an order of this court."

The bill prays for injunctive relief, that plaintiff's grant of right of way be declared a cloud on his title and held of no effect, closing with a prayer for general relief.

Defendant filed an answer in the nature of a cross-bill in which it denies plaintiff was the owner of the two rods wide right of way, alleges that he and his wife on May 18, 1905, deeded it by warranty deed to the Toledo, Ann Arbor & Detroit Railroad Company, denies that plaintiff since the giving of said deed has been in possession of said land, avers that by various legal proceedings, stated at length in the answer, defendant has become the owner of said right of way, denies that the same was ever abandoned by it or its predecessors, admits that defendant intends to complete the building of a steam railroad on said right of way, denies that plaintiff is entitled to the relief he seeks, and says:

"That this defendant for the past few months has been engaged in the construction of said railroad property as far as Dundee, Michigan, and over the lands described in Exhibit A; that defendant will be ready to cross the premises aforesaid and to complete the building of said line therein within a very few weeks; that it has large forces at work at the present time

and that to stop said construction work now would mean irreparable damage and injury to this defendant. That in order to build the said railroad across said premises it will be necessary for this court to dissolve said injunction and defendant hereby offers to give a good and sufficient bond to pay and indemnify said Dunham for any damages that he. may recover in any action brought to condemn said land or by the decree of this or any competent court in the premises, together with costs of such proceedings.   *   *   * That this defendant is entirely without redress against the trespasses of said complainant excepting in a court of equity."

Injunction restraining plaintiff from trespassing upon said right of way and for other affirmative relief was asked.    Answer was made to the cross-bill.

On November 4, 1915, while the case was pending in the lower court, motion by defendant for dissolution of a temporary injunction restraining it from trespassing upon the right of way was denied, and this court on special application vacated the same upon defendant giving an approved bond in the sum of $2,500 conditioned as follows:

"That in case said defendant does not prevail in said cause, that it will, on demand, pay to said complainant any and all damages that may be awarded to said complainant therein; and further that in case said defendant does not establish its ownership of said land in such adjudication, proceed to condemn said land in the manner provided by law, and with due diligence prosecute such proceedings to a final determination, and pay any sum that may be awarded to said complainant, as compensation, upon such condemnation proceedings; and further that in case said premises are not condemned in such proceedings, said defendant will, with due diligence remove its track from said premises, and restore the same to their prior condition, and pay to said complainant all damages which he may have sustained by reason of the taking possession of said lands by said defendant."

Attached to defendant's cross-bill is a copy of the

grant, in short form of warranty deed, of the right of way given by plaintiff to the Toledo, Ann Arbor & Detroit Railroad Company on May 18, 1905, in which the following appears:

"It is agreed as part of the consideration for this grant that the grantees shall build and maintain on each side of said strip of land a modern woven wire fence with cedar posts and also to build a suitable farm crossing at such point as grantor shall select and erect gates thereat. In case said railway is not built within two years from date or the land abandoned for railway purposes, the land herein conveyed shall revert to grantor."

The case was heard on pleadings and proofs taken in open court. The trial court filed a written opinion and pursuant to it entered decree granting plaintiff the relief prayed. Defendant appeals from said decree.

Plaintiff plants his claim on *ipso facto* reversion of title to him by reason of defendant's predecessor's failure to build said interurban railway within two years from the date of his grant, its abandonment of the property, and his re-entry over nine years before filing his bill.

Defendant bases its claim of right on denial of abandonment and the legal propositions that the conditions in plaintiff's deed were not enforceable, the reversion clause was a condition subsequent, in the nature of a forfeiture and unenforceable in a court of equity, which will not aid in enforcing forfeitures.

The record on appeal consists mostly of copies of pleadings and documentary evidence, with a condensed "Case on Appeal" which begins with the statement "There is very little, if any, dispute about the facts in this case." It consists of between four and five pages of what "appears from the testimony," or "according to the undisputed testimony," and contains but part of the testimony of one witness, of whom it

is said: "There was also testimony by Mr. John G. Zabel, attorney for the railroad and one of its officers," quotations from which take about two pages of the so-called case on appeal. His testimony consists largely of a concise history of the Toledo, Ann Arbor & Detroit Railroad Company and its successors, including defendant. He had secured the right of way from plaintiff and others through whose lands the proposed line was to run. He testified that the original road was in the hands of a receiver for two or three years, after which it was sold on receiver's sale to the organizers of the Toledo, Ann Arbor & Jackson Railway Company, the proposed line of which would be north from Petersburg to Jackson and not to Ann Arbor. Several years later that organization was transferred to, or became, the defendant Toledo-Detroit Railroad Company. Before defendant acquired it, construction of the line south of Petersburg was resumed. They "fixed up the tracks and got into Toledo and put a couple of engines and some cars on there and operated that by permission of the authorities along the line temporarily as a steam road." Some two years later, not long before this suit was begun, a plan was devised "of changing it into a steam road" for freight and extend it to Dundee along the old line through plaintiff's farm, and work commenced. Zabel frankly said he was not favorable to that project, as he had promised the farmers along the line when he secured the right of way that it would be an interurban line, and the franchises through the villages were all granted upon that condition. Plaintiff appears to have also been a witness in the case, but what he testified to is left to inference. What other witnesses, if any, were called is not shown.

It stands undisputed that the Toledo, Ann Arbor & Detroit Railroad Company only graded a roadbed and built fences along the right of way in question. It constructed no farm crossing for plaintiff and did

nothing further thereafter upon the property. Plaintiff later constructed a crossing for himself, used the land as his own for pasturage or any purposes he saw fit and neither the original grantee or any of its successors ever physically did anything further on or with this right of way. It is undisputed that no railway of any kind was completed within two years thereafter or up to the time this suit was commenced, and that the present project is a steam road for hauling freight. All of the right of way of the original line except plaintiff's was paid for, while he was paid nothing. His farm lies between Petersburg and Dundee on the proposed and abandoned interurban line between Toledo and Ann Arbor.

The trial court in its opinion found, among other things, that the road for which plaintiff gave the right of way was to be used for an interurban railway and not operated by steam; that, following a receivership sale and reorganization, the plan was adopted to extend the line to Jackson instead of Ann Arbor, which eliminated the Dunham farm from its right of way; but found that at the time of the trial defendant had extended its steam road through plaintiff's farm to Dundee, after the required bond lifting the injunction was filed, and was operating it as a freight road, saying in part:

"The court finds that this land was secured with the idea that it would be an electric line and would be a railroad built and operated on the premises in question within two years from date; that this was not done; that plaintiff had a right to treat this as being an abandoned road and the right of way reverting to him by reason of the defendant not exercising its right thereto in accordance with the deed."

The conclusions of the court were:

"That a decree may pass finding the right of way in the plaintiff, and that if the defendant herein or its successors in interest desire to use said right of

way they must proceed to condemnation in accordance with law and its bond heretofore filed in the cause."

Appellant's counsel urge as grounds for reversal that the conditions in plaintiff's deed being only nominal and without actual benefit to the grantor are unenforceable; his deed of the right of way was a conveyance upon a condition subsequent, to be strictly construed; the title conveyed upon condition subsequent may only be reinvested in the grantor by reentry; and equity will not lend its aid to enforce a forfeiture.

On plaintiff's part, it is insisted that the only consideration for granting a right of way was construction of an electric interurban railway between Toledo and Ann Arbor passing through the two villages between which his farm lay, which consideration totally failed, the road was not built within two years as stipulated, the project was abandoned, and under the terms of the grant the title *ipso facto* reverted to him, in connection with which he took possession of the strip and remained in possession for over nine years prior to filing his bill.

Defendant's claim that the conditions attached to plaintiff's deed were nominal, and, being "without actual or substantial benefit to the grantor," are unenforceable, is not well founded in fact or law. The very fact that he granted this strip of land across his farm without any money consideration emphasizes the value to him of the condition on which it was granted —an interurban railway passing his home through the two villages nearest on each side of his place and extending from Toledo to Ann Arbor. Such conditions, under circumstances shown here, are by common knowledge recognized of substantial value to the person and property of the party in whose favor they are to be performed. A steam railroad might not be, and the fact that he granted the right of way without

price lends probability to his claim that it was not to be a steam railroad.

Defendant's claim that the court erred in finding it was to be an interurban line not operated by steam because the conveyance only mentions "railway" and "railway purposes" without designation of kind, which cannot be contradicted or supplemented by parol, is not tenable. The court's finding is not contradictory of the instrument, but in tendency interpretative. It is supported by the testimony of Zabel, then attorney of the grantee, who secured the right of way and drew up the instrument, and, according to defendant's brief, by the testimony of plaintiff also, none of which is shown to have been objected to. Plaintiff's sworn bill alleges:

"That all of the franchises obtained from the various townships and villages along the lines as located by said company, was for permission to operate a line under the train railway act of the State of Michigan, by any motive power excepting steam."

This is not denied in defendant's answer. A steam railroad and interurban railway are not the same. The latter is a development from street car lines or urban railways customarily if not universally operated otherwise than by steam. As cities grew and demand increased, those urban street car lines were extended to the suburban districts and called suburban lines; then as facilities and demands grew they were extended until

"Interurban lines have been built, so that there are continuous electric lines of several hundred miles in length. The interurban service has developed electric railways." (Encyc. Brit. XXVIII, 92.)

Defendant's claim that equity has no jurisdiction because not empowered to declare forfeiture for non-compliance of a condition subsequent seems to impinge mainly on its claim that plaintiff failed to prove

abandonment by the grantee and re-entry by the grantor. The record furnishes ample evidence to support the trial court's affirmative finding as to both. The deed given by plaintiff conveyed a conditional title of this right of way. Whether a condition precedent or subsequent is perhaps a debatable question.

It is said in *Markham* v. *Hufford,* 123 Mich. 505 (48 L. R. A. 580, 81 Am. St. Rep. 222) :

"A condition which involves anything in the nature of consideration is, in general, a condition precedent. * * * It is in all cases a question of intention, and not of phrase or form."

*Vide,* also, 12 C. J. p. 408.

But, under the facts and findings of the trial court, whether precedent or subsequent is not the controlling issue. Here there was failure to perform the conditions, abandonment, re-entry by the grantor followed by long years of quiet and undisturbed possession, which the courts recognize as divesting the grantee of title and leaving it in the grantor. 3 Thompson on Real Property, § 2065; 2 Elliott on Railroads (3d Ed.), p. 639.

We find no occasion to disturb the decree appealed from, and the same will stand affirmed, with costs to plaintiff.

Sharpe, C. J., and Bird, Snow, Fellows, Wiest, Clark, and McDonald, JJ., concurred.